No. 45,410

L. A. LAYBOURN and ELSIE P. LAYBOURN, *Appellees,* v. DIRECTOR OF REVENUE OF THE STATE OF KANSAS, *Appellant.*

(460 P. 2d 591)

Opinion filed November 8, 1969.

*O. F. Baldwin,* of Topeka, argued the cause, and *William L. Harris, Jr.,* of Topeka, was with him on the brief for the appellant.

*Thomas J. Kennedy,* of Salina, argued the cause, and *Robert B. Berkley* and *John M. Simpson,* both of Salina, were with him on the brief for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This controversy stems from bad debt deductions claimed by the taxpayers, L. A. Laybourn and his wife, but disallowed by the Kansas Director of Revenue.

Briefly summarized, the facts reveal that Laybourn incorporated a company known as the Hustler Corporation, Inc., on December 20, 1960. A stock certificate number 1 representing 100 shares of its $100.00 par value common stock was issued to him for the sum of $10,000.00. No further stock was issued from that time on, and Laybourn was at all times the sole owner, president and chief executive officer of the Hustler Corporation, Inc., which elected, for federal tax purposes, to file as a small business corporation.

Laybourn made advances to Hustler Corporation, Inc., during the years 1961, 1962, 1963 and 1964, in the respective amounts of $154,175.45, $119,500.00, $111,200.00 and $103,000.00 which were used to continue the business operations of the Corporation. The company filed Kansas corporation income tax returns for 1961, 1962, 1963 and 1964, disclosing net operating losses from all its operations in the respective amounts of $123,453.86, $106,641.28, $138,934.53 and $126,856.81. The taxpayers, L. A. Laybourn and wife, claim nearly identical amounts as bad debt deductions on their Kansas individual income tax returns for the years 1961, 1962

and 1963, and as a worthless security deduction on their 1964 individual income tax return. The Income Tax Division of the Department of Revenue refused to allow these deductions, and made an additional assessment of income tax in the aggregate sum of $34,498.92 for the years in question.

The taxpayers' objections were overruled by the Director of Revenue for the State of Kansas and the Board of Tax Appeals. The taxpayers then appealed to the District Court of Saline County, Kansas. Prior to the trial the taxpayers withdrew their objection to the assessment of additional income tax for the year 1964. At the pretrial conference the parties stipulated:

"The controverted issue of fact to be determined by the court is as follows: Whether the above-described cash advances made by L. A. Laybourn to Hustler Corporation, Inc., during the years involved were valid and enforceable debts owed to L. A. Laybourn, or whether these advances were made during said years as a contribution to the capital of Hustler Corporation, Inc."

The case was tried to the district court on a stipulation of facts, oral testimony of witnesses and numerous exhibits. The trial court stated in a letter of decision:

"It is conceded in the briefs of both parties that the substance rather than the form of the transactions is controlling. The Court having considered the evidence produced by the petitioner, being particularly impressed by the testimony of Paul Mott, a practicing CPA, finds that the advances were valid and enforceable debts owed to L. A. Laybourn and were not contributions to capital; that the bad debt deductions claimed by petitioner were erroneously disallowed."

The appellant, the Director of Revenue for the State of Kansas, states the issue on appeal to this court as follows:

"Do advances of money by an individual who is the sole owner, president and manager of a corporation to his corporation for the purpose of his corporation buying oil leases, drilling for oil and other capital expenditure qualify as a 'bona fide uncollectable bad debt' within the meaning of the Kansas Income Tax Act when, in fact, the money was advanced without any security, at no specified rate of interest, without a date for repayment of the money being set and before any attempt by the individual is made to secure repayment from the corporation, said corporation being an active, undissolved and viable corporation with prospective or present ability to repay the money either in money or oil leases?"

Evidence of all the above enumerated factors are proper elements to be considered in determining the question. However, none of them are conclusive. In determining whether the advances were intended as capital or a loan creating a debt the trial court had to

glean the intent of L. A. Laybourn from all the relevant facts and circumstances before it. This court cannot so review and weigh the evidence. We must apply here the substantial evidence rule which is so well established that no citations are necessary to support it.

Findings of the trial court will not be disturbed on appeal when there is any substantial evidence to support them.

The question before the trial court was purely factual. It stated that it was impressed with the oral testimony of Paul Mott, a practicing certified public accountant. Mr. Mott testified the accounting records of both parties disclosed the advances as liabilities. He further testified:

". . . [W]e traced the actual cash transactions into the bank account on the records of the corporation, we also then verified the balances at the end of the year by reference to the counter-set of books with Mr. Laybourn's books where it showed up as a receivable, and we examined the checks, cancelled checks, and we also obtained confirmation from the creditor, Mr. Laybourn, as to the amount of the liability and its nature.

"Q. Was this confirmation you speak of one which is required in writing?

"A. Yes, it was a letter which we normally use in this type of a situation. A letter to Mr. Laybourn asking him to confirm the amount of the liability.

"Q. After conducting your audit, then were you as an independent certified public accountant satisfied that this was a bonafide liability from Hustler Corporation to L. A. Laybourn during the three years involved?

"A. Yes, we were satisfied as to that. Both parties represented it to be so and we so showed it on the audit report."

The findings of the trial court were also supported by the testimony of L. A. Laybourn.

The findings being supported by substantial competent evidence we are bound thereby.

We have examined the numerous authorities cited by appellant. At most they offer but tentative clues as to what is a debt and what is an advance to capital. In the final analysis each case must be decided upon its own particular facts which are probably dissimilar from all others.

The judgment is affirmed.

APPROVED BY THE COURT.